**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 21-4377**

_____

UNITED STATES OF AMERICA

        Plaintiff - Appellee

v.

SALVATORE PIZZUTO

        Defendant - Appellant

_____

Appeal from the United States District Court for the District of South Carolina at Florence. Sherri A. Lydon, District Judge.  (4:20-cr-00683-SAL-1)

_____

Submitted:  October 3, 2022              Decided:  November 3, 2022

_____

Before WILKINSON and THACKER, Circuit Judges, and TRAXLER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**ON BRIEF:**  Kimberly H. Albro, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.  Cory F. Ellis, United States Attorney, Columbia, South Carolina, Lauren L. Hummel, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Florence, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Salvatore Pizzuto pleaded guilty to a felon in possession charge in violation of 18 U.S.C. § 922(g). The district court sentenced him to 63 months in prison, the upper limit of his Sentencing Guidelines range. On appeal, he argues that this sentence was both procedurally and substantively unreasonable. For the following reasons, we affirm.

I.

In October 2020, Pizzuto, a Connecticut resident and convicted felon, drove to South Carolina with another Connecticut resident to buy firearms. J.A. 103–04. Testimony reveals that the men also brought a malfunctioning rifle to South Carolina to repair it. *Id.* They met up with three other individuals in Florence, South Carolina, where Pizzuto gave one of them cash to make a straw purchase of six guns. J.A. 104. An ATF officer observed Pizzuto and the group exit a gun store with a black duffle bag, which they placed in the trunk of a car with Connecticut plates. J.A. 100.

After the gun purchases, Pizzuto and his confederate drove away, with Pizzuto in the passenger seat. J.A. 103. A police officer observed several traffic violations and tried to pull the car over, but the car sped up to avoid apprehension and eventually lost control, resulting in a collision that caused the death of another driver. J.A. 100. The car then crashed into a ditch. J.A. 101. Pizzuto took off running, so the officers deployed a K-9 to stop him. *Id.* Officers then seized a gun from his front pocket. *Id.* A search of the car revealed a total of ten weapons, some high-capacity magazines, and illicit drugs. J.A. 101–02. Six of the weapons were identified as the ones just purchased from the gun store. J.A. 52. Officers found an AR9 9mm rifle and a fifty-round 9mm drum magazine in the trunk.

J.A. 102. In the passenger's floorboard, where Pizzuto had been sitting, deputies found a Taurus 9mm pistol with a laser and ammunition. *Id.*

Pizzuto was charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), to which he later pleaded guilty. J.A. 13–14, 35. His Presentence Investigation Report (PSR) calculated a base offense level of 20 under U.S.S.G. § 2K2.1(a)(4)(B), as Pizzuto was a prohibited person and the offense involved a semiautomatic firearm capable of accepting a large-capacity magazine. J.A. 109. The PSR also provided a four-level sentence enhancement based on the offense involving 8 to 24 firearms under U.S.S.G. § 2K2.1(b)(1)(B). *Id.*

During sentencing, Pizzuto objected to the four-level enhancement. J.A. 51. He argued that there was not sufficient evidence connecting him to an eighth weapon. J.A. 52–56. The district court overruled this objection, noting that "an eighth gun was located in the front passenger floorboard where Pizzuto was seated" and "further, a total of ten firearms were recovered from the vehicle." J.A. 66–67. The district court adopted the PSR facts, and the Guidelines range of 51–63 months. J.A. 67–68. The court sentenced Pizzuto to 63 months in prison. J.A. 78.

## II.

Pizzuto appeals, arguing that his sentence was both procedurally and substantively unreasonable. He asserts three procedural errors. First, he argues that the four-level enhancement for an offense involving 8 to 24 guns was improper since the government did not prove by a preponderance of the evidence that the eighth gun could be attributed to him. Second, he argues for the first time on appeal that his base offense level was

3

improperly increased from 14 to 20 under U.S.S.G. § 2K2.1(a)(4)(B) because there was no connection made between Pizzuto and the semiautomatic firearm justifying this increase. Third, he argues that the district court cited incorrect findings in support of the sentence and that the court failed to consider his arguments for a lower sentence. For the following reasons, we disagree.

We review a sentencing decision for procedural and substantive reasonableness, applying a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 51–52 (2007). In procedural reasonableness review, we ensure that the district court committed no significant procedural error, such as miscalculating the Sentencing Guidelines range, inadequately considering the 18 U.S.C. § 3553(a) factors, insufficiently explaining the sentence, relying on clearly erroneous facts, or failing to address "the parties' nonfrivolous arguments in favor of a particular sentence." *United States v. Provance*, 944 F.3d 213, 218 (4th Cir. 2019) (internal quotation marks omitted); *see also Gall*, 552 U.S. at 51. In reviewing the district court's imposition of a sentencing enhancement and its calculation of the Guidelines range, "we review its legal conclusions de novo and its factual findings for clear error," finding clear error only if "on the entire evidence," we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Cox*, 744 F.3d 305, 308 (4th Cir. 2014) (internal quotation marks omitted). Facts supporting a sentencing enhancement must be proven by a preponderance of the evidence. *United States v. Andrews*, 808 F.3d 964, 968 (4th Cir. 2015).

4

A.

We begin with Pizzuto's argument about the sentencing enhancement under U.S.S.G. § 2K2.1(b)(1)(B). That section provides for a four-level enhancement when an offense involves 8 to 24 firearms. The commentary to this section notes that a court should "count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed." U.S.S.G. § 2K2.1, cmt. n. 5. We note that in cases of jointly undertaken criminal activity, such as the instant case, specific offense characteristics are determined by "all acts and omissions of others that were (i) within the scope of the jointly undertaken activity; (ii) in furtherance of that criminal activity; and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). We also note that Pizzuto does not contest that he was a prohibited person and expressly stipulates that he unlawfully possessed seven guns. *See* J.A. 52.

The record confirms that Pizzuto possessed at least one more gun to warrant the four-level enhancement. Possession of contraband "may be actual or constructive, and it may be sole or joint." *United States v. Moody*, 2 F.4th 180, 189 (4th Cir. 2021) (internal quotation marks omitted). The government can prove constructive possession by showing that Pizzuto "intentionally exercised dominion and control over the firearm, or had the power and the intention to exercise dominion and control over the firearm." *United States v. Scott*, 424 F.3d 431, 436 (4th Cir. 2005). "[C]onstructive possession may be established by either circumstantial or direct evidence," and "a fact finder may properly consider the totality of the circumstances surrounding the defendant's arrest and his alleged

5

possession." *United States v. Herder*, 594 F.3d 352, 358 (4th Cir. 2010) (internal quotation marks and citations omitted).

Here, the record shows that there was a 9 mm pistol found in the front passenger floorboard of the car where Pizzuto was sitting. It also shows that Pizzuto came from Connecticut to South Carolina to conduct a straw purchase of firearms he could not legally possess and brought an AR9 rifle in tow. It is not unreasonable to suggest that Pizzuto brought other guns with him on the trip, and thus had knowledge of and access to this item. *See Moody*, 2 F.4th at 193 (noting that proximity to a firearm is a relevant consideration for constructive possession). The district court thus did not clearly err in inferring that Pizzuto both knew of and had access to the 9 mm pistol in the front passenger floorboard as the eighth gun.

The enhancement can also be independently supported by the AR9 rifle. "[I]rrespective of one stated basis for imposition of the enhancement, we can affirm [a] sentence on the basis of any conduct [in the record] that independently and properly should result in an increase in the offense level by virtue of the enhancement." *United States v. Garnett*, 243 F.3d 824, 830 (4th Cir. 2001) (internal quotation marks omitted) (third alteration in original). The facts show that Pizzuto and another individual brought this rifle down from Connecticut to be repaired. This supports an inference that the defendant had knowledge of, and access to, the item. The district court also acknowledged this possibility when it noted that "a total of ten firearms were recovered from the vehicle" while overruling Pizzuto's initial objection to this enhancement. *See* J.A. 65. We thus conclude this enhancement was proper.

B.

We also reject Pizzuto's new challenge to his base offense level under U.S.S.G. § 2K2.1(a)(4)(B). Pizzuto stipulates that this argument is reviewed under plain error because he did not previously object to it. "To prevail on plain error review, an appellant must show (1) that the district court erred, (2) that the error was plain, and (3) that the error affected his substantial rights." *United States v. Cohen*, 888 F.3d 667, 685 (4th Cir. 2018). Even with those prongs satisfied, a court of appeals should only "exercise its discretion to correct the forfeited error if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016) (internal quotation marks omitted).

Section 2K2.1(a)(4)(B) provides for a base offense level of 20 if the offense of conviction involved a prohibited person and a semiautomatic firearm capable of accepting a large-capacity magazine, which is defined as a firearm with either an attached magazine "that could accept more than 15 rounds of ammunition." or "a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to the firearm." U.S.S.G. § 2K2.1, cmt. n. 2. The PSR applied this base offense level for the AR9 rifle and 50-round drum magazine found in the trunk of the vehicle and the extended 9mm magazine loaded with 25 rounds found in the front passenger floorboard. Pizzuto fails to show any plain error on this front. As shown in Section A, he constructively possessed the AR9, and thus the base offense level was proper.

7

C.

Finally, we find that the district court did not commit any other procedural error during Pizzuto's sentencing. The court correctly calculated the advisory Guidelines range, thoroughly explained the selected sentence, and adequately considered the sentencing factors under 18 U.S.C. § 3553(a). "[A] court is not required to discuss each § 3553(a) factor extensively, but need only provide a rationale tailored to the particular case." *United States v. Allmendinger*, 706 F.3d 330, 343 (4th Cir. 2013) (internal quotation marks omitted). Moreover, our review of the record convinces us that the district court did not consider clearly erroneous facts in sentencing Pizzuto. Although the court did mention the bystander fatality when considering certain § 3553(a) factors, it did not attribute that death to Pizzuto. Instead, it considered the fatality under 18 U.S.C. §§ 3553(a)(1)–(2), explicitly noting that even though Pizzuto was not responsible for the death, it was an example of what could continue to happen if Pizzuto was not adequately deterred from criminal behavior in the future. *See* J.A. 81, 84.

The court also stated that it considered Pizzuto's arguments for a downward variance sentence or a lower sentence within the Guidelines range. *See* J.A. 83. It expressly rejected that request by stating that "[w]hile perhaps a good argument can even be made for an *upward* variance in this case to reflect the seriousness of the offense and accomplish the other sentencing purposes, ultimately I believe the sentence of 63 months is sufficient but not greater than necessary to comply with sentencing purposes." *Id.* (emphasis added). We conclude that the district court "considered the parties' arguments and [gave] a

8

reasoned basis for exercising [its] own legal decisionmaking authority," and thus no procedural error lies. *Rita v. United States*, 551 U.S. 338, 356 (2007).

III.

Pizzuto also argues that his sentence was substantively unreasonable because the court imposed the sentence based on several factual inaccuracies and relied on the bystander fatality caused by the car chase as support for its analysis of the 18 U.S.C. § 3553(a) factors. After finding no procedural error, this court considers the substantive reasonableness of a sentence, evaluating "the totality of the circumstances to determine whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." *United States v. Nance*, 957 F.3d 204, 212 (4th Cir. 2020). Any sentence within a properly calculated Guidelines range is presumptively substantively reasonable, and the defendant bears the burden of demonstrating the sentence is unreasonable when measured against the § 3553(a) factors. *United States v. White*, 810 F.3d 212, 230 (4th Cir. 2016).

Pizzuto cannot make such a showing here. As the district court noted, "one of…the most telling things in this case is that [Pizzuto] ha[d']nt previously served any real time" despite having a number of criminal convictions, showing an upper Guidelines sentence was necessary for future deterrence. J.A. 78. Moreover, the court correctly found that Pizzuto "greatly benefited from" the fact that "two of [his previous] convictions involved *Alford* pleas for which the [Probation Office] could not assign points for purposes of placing the defendant in the appropriate criminal history category." J.A. 81–82. And finally, this offense involved "very serious" conduct involving interstate travel for the straw

9

purchase of weapons. J.A. 81. Based on the record, we believe that the district court was substantively reasonable in finding Pizzuto's sentence "sufficient, but not greater than necessary," to satisfy the goals of sentencing. *See* 18 U.S.C. § 3553(a).

## IV.

For the foregoing reasons, the district court is affirmed.

*AFFIRMED*.